**In re WELLS PROPERTIES, INC., an Illinois corporation, Debtor.**

**Bankruptcy No. 89 B 3407.**

United States Bankruptcy Court, N.D. Illinois, E.D.

July 6, 1989.

---

686

William J. Connelly, Hinshaw, Culbertson, Moelmann, Hoban & Fuller, Chicago, Ill., for debtor.

Douglas Lipke, Rudnick & Wolfe, Chicago, Ill., for tax purchasers.

MEMORANDUM OF DECISION

EUGENE R. WEDOFF, Bankruptcy Judge.

In order to encourage prompt payment of property taxes and collect taxes that are not promptly paid, the State of Illinois has enacted laws providing for tax sales of property as to which taxes are delinquent. In this Chapter 11 case, the debtor's principal asset, a commercial building, was sold at such a tax sale prior to the bankruptcy filing. The case is now before the court on a motion, filed by the purchasers at the tax sale, seeking authorization to pursue an action in state court for the issuance of a deed to the tax-delinquent property. The central issue raised by the motion is whether the debtor in possession was successful in attempting to redeem its property from the tax sale. The court held an evidentiary hearing on this issue, and, as set forth below, now finds that, although the debtor in possession did not tender the correct amount for redemption, it did act in good faith, in reliance on information supplied by the administrative office responsible for redemptions. Accordingly, the attempted redemption was effective under Illinois law,

and the motion of the tax purchasers must be denied.

### Findings of Fact

The only facts in dispute in this matter are the conduct of the debtor's attorneys and of the employees of the Cook County Clerk's office in connection with the attempted redemption. These disputed facts are discussed later in this opinion, in the context of the legal issue regarding the good faith of the redemption. The facts set forth below are undisputed.

**Parties.** There are four parties actively involved in the present matter:

• The debtor, Wells Properties, Inc. ("Wells Properties"), is an Illinois corporation that is the sole beneficiary of the land trust holding title to a 30 story office building located at 201 North Wells Street in downtown Chicago ("201 North Wells"). Wells Properties failed to pay the 1985 property taxes assessed against this property, as well as the 1986 and 1987 taxes, and the first installment of the 1988 taxes.

• Freedom Savings and Loan Association ("Freedom Savings") is a Florida institution that provided the principal financing for Wells Properties. Freedom Savings has asserted a claim of over $14 million against Wells Properties, secured by, among other things, a first mortgage on the property at 201 North Wells.

• Regent Properties and First Central Corporation (the "tax purchasers") are, respectively, an Illinois general partnership and an Illinois corporation. In February, 1987, the tax purchasers obtained certificates of purchase for the property at 201 North Wells by paying the taxes and interest due on the property for 1985. The tax purchasers subsequently paid the property taxes as they became due for the years 1986, 1987, and 1988 (first installment). The total out of pocket expenses of the tax purchasers, in making these payments and

paying associated costs, have been approximately $903,000.

• Kezios Properties is a partnership comprised of two brothers. This partnership was the successful bidder at an auction of the property at 201 North Wells, conducted on April 27, 1989, pursuant to the order of this court. Kezios Properties has entered into a contract with Wells Properties, in accordance with its bid, to purchase the property for $5.25 million.

**Proceedings apart from the disputed conduct.** Wells Properties commenced this bankruptcy case on February 28, 1989, by filing a voluntary petition for relief. The timing of the filing was significant. Although the last date for redeeming 201 North Wells from the tax sale was originally February 17, 1989, the tax purchasers had extended the deadline to February 28. The bankruptcy filing, at the expiration of this extended period, was intended to further extend the time for redemption, pursuant to Section 108(b) of the Bankruptcy Code (Title 11, United States Code), for 60 days, *i.e.*, until May 1, 1989.[1]

About a month after the bankruptcy filing, on April 3, 1989, Freedom Savings filed a motion to compel the sale of 201 North Wells by auction. Freedom presented this motion on an emergency basis, asserting that Wells Properties' right to redeem the property from the tax sale would expire on May 1, and that an auction sale would be required to provide Wells Properties with the funds necessary to exercise its right of redemption. Two days later, on April 5, Wells Properties filed its own emergency motion, seeking authorization to sell 201 North Wells to a third party. The tax purchasers responded to these motions by objecting to any sale and moving to dismiss, asserting that the right of Wells Properties to redeem 201 North Wells had already expired, and that this case was filed in bad faith. No other party objected to the proposed sales.

---

1. The sixty day period would have ended on Saturday, April 29. Illinois law provides that when the last day on which any act provided by law is to be done falls on a Saturday, Sunday or holiday, then that day, and any succeeding Saturday, Sunday or holiday is to be excluded in calculating the time period. Ill.Rev.Stat. ch. 1, ¶ 1012 (1987). *See John Allan Co. v. Sesser Concrete Products Co.,* 114 Ill.App.2d 186, 252 N.E.2d 361 (1969) (applying a similar statute to extend the time for a tax sale redemption from Saturday to Monday).

On Friday, April 21, after hearing arguments of counsel and reviewing certain documents filed with the Cook County Recorder of Deeds, this court denied the motion to dismiss, ruled that the right to redeem had not expired, and granted Freedom Savings' motion, which was now supported by Wells Properties, to allow an auction sale of 201 North Wells.[2] On the following Tuesday, April 25, the court entered a further order, defining the procedures under which the sale should take place. This order approved a bid package specifying that the auction would take place on April 27, with a cash down payment of $1.1 million, and a minimum bid of $1.1 million. The order further directed that the down payment be used, on or before May 1, to redeem the property from the real estate tax sale. The auction sale took place as ordered, and Kezios Properties was the successful bidder, for $5.25 million, as noted above.

On the following day, April 28, after hearing evidence as to the conduct of the auction, the court entered an order confirming the sale, and finding that Kezios Properties was a good faith purchaser pursuant to Section 363(m) of the Bankruptcy Code. The April 28 order also contained several provisions relating to the redemption of 201 North Wells from the tax sale. Paragraph 4 provided that the auctioneer was "authorized and directed to immediately transfer the sum of $1,053,974.20 *or such sums as may be necessary to redeem the delinquent real estate taxes* from the $1,100,000.00 earnest money deposited by Purchaser with the Auctioneer at the Sale, to the Debtor-in-Possession account." The italicized portion of this part of the order was added, in handwriting, at the time of the hearing. Paragraph 5 of the April 28 order authorized the depository bank holding the debtor-in-possession account to issue checks payable to the County Clerk for Cook County, in specified amounts totalling $1,053,974.20 "or such sums as are required to redeem the delinquent real estate taxes," the last phrase again being added in handwriting. Finally, Paragraph 7 of

the order directed the County Clerk to accept the checks drawn on the debtor-in-possession account and apply them toward redemption of the property at 210 North Wells.

On the afternoon of April 28, attorneys for the debtor tendered checks totalling $1,053,974.20 to the County Clerk's office. The Clerk's staff accepted the checks, gave receipts to the attorneys, and recorded the redemption in the official judgment, sale, redemption and forfeiture record.

On May 12, 1989, the tax purchasers filed the motion that is now before the court, titled "Motion of Tax Purchasers to Proceed with State Court Expungement Proceeding." In this motion the tax purchasers allege that the correct amount for redemption of 201 North Wells was $1,063,-690.68, or $9,716.48 more than the amount tendered by Wells Properties (¶ 4), that Wells Properties was advised of the correct amount by the County Clerk, but that counsel for Wells Properties procured the acceptance by the County Clerk of the lesser amount by tendering a copy of this court's April 28 order and an outdated estimate of cost of redemption prepared by the Clerk's office (¶ 5). The motion further alleges that the County Clerk made no error or misrepresentation to Wells Properties concerning the amount necessary for redemption (¶ 13), and concludes by asserting that, because of the inadequate amount tendered, a proper redemption did not occur on or before May 1, 1989, and that the tax purchasers should be allowed to proceed in state court to expunge the improper attempted redemption from the Clerk's records (¶¶ 15–16).

On May 22, Wells Properties filed a memorandum in opposition to the tax purchasers' motion that took issue with its factual allegations. According to this memorandum (at 3), Wells Properties tendered the redemption amount to the Cook County Clerk in good faith, based on a statement rendered by personnel of the Clerk's office after persistent efforts on

---

**2.** This order, together with subsequent orders approving sales terms and the sale itself, has been appealed. The appeal, which is pending in the District Court as Case No. 89 C 4558, did not result in any stay of proceedings before this court.

the part of Wells Properties' counsel. Kezios Properties and Freedom Savings also filed memoranda opposing the tax purchasers' motion.

On May 26, the court determined that it should resolve the factual dispute over the good faith of the attempted redemption in order to rule on the tax purchasers' request for relief. The hearing was held on June 13–14. All of the parties have submitted post-hearing briefs.

### Conclusions of Law

**A. Jurisdiction.** This court has jurisdiction to decide the merits of the pending motion, insofar as it seeks relief from the automatic stay, pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(G) and General Local Rule 2.33 of the United States District Court for the Northern District of Illinois. Insofar as the motion seeks abstention, this court has jurisdiction to make a report and recommendation to the district court, pursuant to 28 U.S.C. § 1334(c) and Bankruptcy Rule 5011(b). The court has jurisdiction to determine the effectiveness of the attempted redemption both as a predicate to ruling on the requested relief from the stay and also pursuant to 28 U.S.C. §§ 1334(d) and 157(b)(2)(K) and General Local Rule 2.33.

**B. Illinois Law Regarding Tax Sales and Redemptions.** There are three issues raised by the tax purchasers' motion: (1) whether this court or the state court should determine the effectiveness of the attempted redemption, (2) whether the proper amount was tendered to redeem the property, and (3) whether, if the proper amount was not tendered, the redemption was nevertheless effective in that the attempted redemption was made in good faith reliance on advice of the County Clerk's office.

All of these issues depend, to some extent, on the Illinois law governing property tax sales and redemptions, which, as applicable to the present case, can be outlined briefly. *See Rosewell v. Chicago Title & Trust Co.*, 99 Ill.2d 407, 410–11, 76 Ill.Dec. 831, 832–33, 459 N.E.2d 966, 967–68, *appeal dism. sub nom. Blum v. Rosewell*, 467 U.S. 1237, 104 S.Ct. 3503, 82 L.Ed.2d 813 (1984); *Tabor Enterprises, Inc. v. People of the State of Illinois*, 65 B.R. 42, 44–45 (N.D.Ohio 1986). For a more detailed exposition of the law, *see* D. Karlen & R. Slutzky, "Tax Collection and Methods of Enforcement" in *Real Estate Taxation* (Ill.Inst. for CLE, 1987). The source of this law is the Revenue Act of 1939, Ill.Rev. Stat. ch. 120, ¶¶ 482 *et seq.* (1987). Section 216 of the Act, Ill.Rev.Stat. ch. 120, ¶ 697, creates "a prior and first lien" on property for all taxes levied on that property in a given year, attaching as of the first day of that year. In Cook County, the actual tax bill is to be mailed by June 30 of the subsequent year, but it is payable in two installments—the first an estimated payment of 50% of the prior year's taxes, billed by January 31, and payable by March 1; the balance, based on the actual June tax bill, payable by August 1. Payments made after the due date incur interest to be paid into the county treasury. Revenue Act §§ 224, 224.1, Ill.Rev.Stat. ch. 120, ¶¶ 705, 705.1.

If the property taxes are not paid by September 1, the county collector may obtain from the circuit court a judgment and order of sale for the delinquent property, after providing both published and mailed notice to interested parties. Revenue Act §§ 225, 230, 235, Ill.Rev.Stat. ch. 120, ¶¶ 706, 711, 716. Pursuant to the judgment and order of sale, a public auction of the delinquent property is held, at which all successful bidders must pay the full amount of delinquent taxes, penalties and fees, and in which the competition among bidders is to determine which bidder will accept the lowest interest penalty rate on this payment (the maximum rate is 18% per six month period). Revenue Act § 245, Ill. Rev.Stat. ch. 120, ¶ 726. The lowest bidder receives a certificate of purchase. Revenue Act §§ 245, 248, Ill.Rev.Stat. ch. 120, ¶¶ 726, 729. The tax purchaser may exchange this certificate for the proceeds of redemption, cancelling all claims to the delinquent property (Revenue Act § 262, Ill. Rev.Stat. ch. 120, ¶ 743) or, if there is no redemption, may surrender the certificate in exchange for a tax deed. Revenue Act § 266, Ill.Rev.Stat. ch. 120, ¶ 747. The cer-

tificate itself, however, does not create any legal or equitable interest in the delinquent property. *City of Chicago v. City Realty Exchange, Inc.*, 127 Ill.App.2d 185, 190, 262 N.E.2d 230, 232 (1970). Rather, it is a form of lien—a charge against the property for the payment of the debt represented by the tax purchaser's outlay. *Id.*

Following a tax sale, parties interested in the delinquent property may redeem it by paying to the county clerk, in cash or certified funds, the delinquent taxes, interest and fees (as were paid by the tax purchaser), together with the interest penalty bid by the purchaser on the delinquent taxes, subsequent taxes (with interest) paid by the tax purchaser, the tax purchaser's costs, and certain fees. Revenue Act § 253, Ill.Rev.Stat. ch. 120, ¶ 734. For property of the sort involved in this case, the redemption is required to be made within two years of the tax sale. *Id.* However, that period may be extended by the tax purchaser, as was done in the present case, for any period up to three years from the date of the tax sale. Revenue Act § 263, Ill.Rev.Stat. ch. 120, ¶ 744. If property is redeemed, the county clerk is directed to record the redemption in a "tax judgment, sale, redemption and forfeiture record." Revenue Act §§ 232, 241, Ill.Rev.Stat. ch. 120, ¶¶ 713, 722. This record is prima facie evidence of the validity of the redemption. Revenue Act § 252, Ill.Rev.Stat. ch. 120, ¶ 733.

If a redemption is not made within the statutory period, the tax purchaser, upon meeting various requirements of notice, is entitled to receive a tax deed for the delinquent property, which conveys merchantable title. Revenue Act § 266, Ill.Rev.Stat. ch. 120, ¶ 747. The procedure specified by the statute requires that a petition for deed be filed, no more than five months before the expiration of the redemption period, in the circuit court proceeding in which the judgment of sale was rendered. *Id.* If a tax purchaser believes that the clerk has recorded a redemption in error, the purchaser may seek to vacate the redemption or expunge the record in that same proceeding, although the statute does not expressly authorize this relief. *See, e.g.,*

*Weiner v. Jobst,* 22 Ill.2d 11, 174 N.E.2d 561 (1961); *Skach v. Sykora,* 6 Ill.2d 215, 127 N.E.2d 453 (1955); *County Collector of DuPage County v. Bodoh,* 98 Ill.App.3d 950, 54 Ill.Dec. 301, 424 N.E.2d 1204 (1981).

**C. The Issues Raised by the Pending Motion.** With the foregoing understanding of Illinois property tax law, the issues raised by the tax purchasers' motion can be addressed.

**1. The effectiveness of the attempted redemption should be determined by this court.** The principal relief requested by the tax purchasers' pending motion is authorization to proceed in state court, where the tax purchasers have already filed petitions for deed, to obtain an expungement of the County Clerk records showing that the 201 North Wells property has been redeemed. The motion sought this result on two distinct legal theories: first, that the automatic stay imposed by Section 362 of the Bankruptcy Code should not prohibit them from proceeding in state court, either because it does not apply to an expungement proceeding or because they have shown cause for its modification; and second, that even if the automatic stay would prevent them from proceeding in state court, that this court should abstain from making a determination of the validity of the attempted redemption, in favor of a state court adjudication, pursuant to 28 U.S.C. 1334(c). Although both of these theories—relief from the stay and abstention—result in the tax purchasers being allowed to proceed in state court, they actually raise very different considerations.

**a. Relief from stay.** In seeking relief from the stay, the tax purchasers rely on their contention that the redemption attempted by Wells Properties was ineffective. On this basis, they argue that the stay should not apply to prevent them from obtaining a tax deed after the last date for redemption has passed. The legal portion of this argument is correct. The automatic stay imposed by Section 362(a) of the Bankruptcy Code has consistently been interpreted only to prohibit affirmative conduct by a non-debtor, not to toll the running of a statutory period of redemption *In re Tyn-*

*an,* 773 F.2d 177, 179–80 (7th Cir.1985); *Johnson v. First National Bank of Montevideo,* 719 F.2d 270, 276 (8th Cir.1983), *cert. denied,* 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984) ("Congress intended § 362(a) to prohibit only certain types of *affirmative actions* ..."). These holdings were applied specifically to the running of the redemption period under the Illinois Revenue Act in *Tabor Enterprises, Inc. v. People of the State of Illinois,* 65 B.R. 42 (N.D.Ohio 1986):

> [T]he expiration of the Illinois redemption period, which extinguished [debtor's] interest in the property, is not the type of affirmative act proscribed by § 362(a). Indeed, the expiration of the redemption period results directly from the debtor's *failure* to act.

65 B.R. at 46. Accordingly, these cases hold that the 60 day extension for "curing a default," provided by Section 108(b) of the Bankruptcy Code is the only remedy offered in bankruptcy to a debtor faced with an expiring period of redemption. If Wells Properties did indeed fail to redeem within the period for redemption, as extended by Section 108(b), it would very likely lose its right to retain 201 North Wells.[3] However, all of this assumes that Wells Properties did not timely redeem its property from the tax sale. Until the tax purchasers establish a failure to redeem, they are not, by their own arguments, entitled to relief from the stay. This court must therefore determine the effectiveness of the redemption in order to rule on the requested relief from the automatic stay.

**b. Abstention.** The tax purchasers' other basis for allowing state court determination of the effectiveness of the redemption is a request that this court abstain from determining the issue pursuant to 28 U.S.C. § 1334(c). The court orally denied the request for abstention on May 26. However, in so doing the court employed an incorrect procedure. Bankruptcy Rule 5011(b) provides that, after hearing a motion for abstention, a bankruptcy judge should file a report and recommendation for disposition of the motion, so that, in the event of objections, the district court may make a final determination, pursuant to Bankruptcy Rule 9033. No party sought such a report in the present case, and this court has not filed one. The issue may be waived. But in the event that a report and recommendation is still appropriate, the following is the recommendation of this court for disposition of the tax purchasers' request for abstention.

■ **i. Mandatory abstention under 28 U.S.C. § 1334(c)(2).** Section 1334(c) provides for two different types of abstention, mandatory and permissive. Section 1334(c)(2) makes abstention mandatory, under specified circumstances, for a particular kind of proceeding—one that is "related" to a bankruptcy case (a case under title 11), but "not arising under title 11 or arising in a case under title 11." In *Harley Hotels, Inc. v. Rain's International, Ltd.,* 57 B.R. 773, 777–80 (M.D.Pa.1985), the district court examined the distinctions between these types of proceedings and concluded that in order to be a merely "related" proceeding, and so subject to mandatory abstention, a proceeding would have to

---

**3.** It might well be that the automatic stay would operate to prohibit the tax purchasers from proceeding in state court to obtain issuance of a deed, since this proceeding would be an affirmative action prohibited by Section 362(a)(2), (3), and (4) of the Bankruptcy Code (which stays: the enforcement, against property of the estate, of a judgment obtained before the commencement of the bankruptcy case; an act to exercise control over property of the estate; and an act to enforce a lien against property of the estate). *Cf. In re Josephs,* 85 B.R. 500, 502 (Bankr.N.D. Ill.1988), *aff'd* 93 B.R. 151 (N.D.Ill.1988) (although the period of redemption in a mortgage foreclosure is not tolled, the automatic stay does operate to prohibit a foreclosure sale). Never-

theless, the tax purchasers in this case would appear to have little difficulty in showing cause for relief from the stay if the period of redemption had expired without an effective redemption. In such circumstances, the tax purchasers would have at least an apparent right to immediate possession of the delinquent property, which Wells Properties would not be able to adequately protect. *See First Financial Savings & Loan Association v. Winkler,* 29 B.R. 771, 776 (N.D.Ill.1983) (holding, in the context of a mortgage foreclosure, that where an interest in property "includes the right to obtain a deed in the absence of timely payment" no provision for payment over time will provide adequate protection).

lie outside of the "core" jurisdiction of bankruptcy judges, described by 28 U.S.C. § 157(b)(2). This holding—that mandatory abstention is inappropriate in core proceedings—has been widely accepted. *In re Stockert Flying Service, Inc.*, 74 B.R. 704, 707 (N.D.Ind.1987) ("Drawing from the interaction of § 1334(c)(2) and § 157(b)(1), 'related to' has been viewed as interchangeable with 'non-core' proceedings"); *In re Pankau*, 65 B.R. 204, 208 (Bankr.N.D.Ill. 1986) ("[M]andatory abstention applies only to noncore proceedings"); *In re A & D Care, Inc.*, 90 B.R. 138, 141 (Bankr.W.D. Pa.1988) ("Mandatory abstention can only arise in cases involving non-core, related proceedings.") *In re Texaco Inc.*, 77 B.R. 433, 437 (Bankr.S.D.N.Y.1987) (mandatory abstention denied because "dispute involves a core proceeding").

The effort by the tax purchasers in the present case to expunge the redemption of 201 North Wells from the records of the County Clerk, although grounded in state law, is plainly a core proceeding. The district court, and by reference the bankruptcy court, has exclusive jurisdiction over property of a debtor's estate, pursuant to 28 U.S.C. § 1334(d), and the question whether the redemption in this case is valid will determine whether the tax purchasers or the bankruptcy estate is entitled to own 201 North Wells, which is now the estate's largest asset. *Cf. In re A & D Care, Inc.*, 90 B.R. at 141 (holding that a dispute over the only major asset of a debtor "must be 'core' "). Furthermore, the tax purchasers here are attempting to establish that the lien represented by their certificates of purchase is still valid, in spite of the attempted redemption, and proceedings to determine the validity of liens fall into one of the categories of "core" proceedings expressly set out in the statute. 28 U.S.C. § 157(b)(2)(K). Thus, the present proceeding is not subject to mandatory abstention.

■ **ii. Permissive abstention under 28 U.S.C. § 1334(c)(1).** Section 1334(c)(1) addresses itself to the discretion of the district court, allowing abstention in any bankruptcy proceeding "in the interest of justice, or in the interest of comity with State courts or respect for State law." Courts have abstained pursuant to this provision in proceedings that raised novel or unsettled issues of state law, without raising significant issues of bankruptcy law. *In re Krupke*, 57 B.R. 523, 528–29 (Bankr. W.D.Wis.1986); *In re A & D Care, Inc.*, 90 B.R. at 141–42. On the other hand, where there are significant bankruptcy law issues or where the state law involved is settled, courts have declined to abstain under Section 1334(c)(1). *In re Republic Oil Corp.*, 51 B.R. 355, 357–58 (Bankr.W.D.Wis.1985); *In re Allegheny, Inc.*, 68 B.R. 183, 192–93 (Bankr.W.D.Pa.1986). In the present proceeding, as discussed below, the applicable state law (regarding the impact of a mistake by the County Clerk on a party attempting to redeem property from a tax sale) is well established. On the other hand, there appears to be an unsettled issue regarding the impact of Section 108(b) of the Bankruptcy Code on the calculation of interest and penalties payable on redemption. This state of the law strongly indicates that permissive abstention would not be appropriate here.[4] This court therefore recommends that the district court exercise its discretion not to abstain.

**2. The proper amount for redemption was not tendered by Wells Properties.** The first substantive issue to be determined in this proceeding is whether the $1,053,974.20 deposited by Wells Properties with the County Clerk was the proper amount for redemption of 201 North Wells, or whether a larger amount, the $1,063,-690.68 suggested by the tax purchasers, was required. During the hearing, the parties acknowledged that the difference between the two amounts was the result of additional interest, penalties, and costs for the period from February 28, 1989, when the period for redemption would have expired but for the filing of the bankruptcy case by Wells Properties, to April 28, 1989, when the redemption was attempted. The

---

**4.** Moreover, on a practical level, because a trial of the proceeding has already been held in bankruptcy court, it would impose a significant burden on the parties, and cause substantial delay in resolving the dispute, if further proceedings were required in state court.

sum suggested by the tax purchasers includes interest, penalties, and costs for this period; the amount actually paid by Wells Properties does not.

■ Wells Properties, Freedom Savings, and Kezios Properties have all taken the position that the amount tendered by Wells Properties has not been shown to be incorrect. In essence, they make two arguments. The first is that the tax purchasers' certificates of purchase constituted at best secured claims against 201 North Wells. Under the recent decision of the United States Supreme Court in *United States v. Ron Pair Enterprises, Inc.,* — U.S. ——, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), all secured claims, whether arising from consensual liens, like mortgages, or statutory liens, like the tax purchasers' liens in this case, are to be allowed interest pursuant to Section 506(b) of the Bankruptcy Code (allowing interest to the holder of an allowed secured claim to the extent that it is "secured by property the value of which ... is greater than the amount of such claim"). Prior to *Ron Pair,* there was a split of authorities, with at least one circuit court and one commentator taking the position that interest on a claim secured by a non-consensual lien, accruing after the filing of a bankruptcy petition, should not be allowed under Section 506(b). *Ron Pair,* 109 S.Ct. at 1029, n. 1. However, the thrust of the pro-redemption argument is that, regardless of whether post-petition interest should be paid pursuant to Section 506(b), it would not be collectible by the County Clerk at the time of redemption, but rather would have to be paid to the tax purchasers pursuant to some order of this court.[5]

This argument is mistaken, however, in its initial assumption. The certificates of purchase do not constitute claims. Section 101(4) of the Bankruptcy Code defines "claim" as

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

The key concept in this definition is that a claim involves a "right to payment." This concept is continued in Section 102(2), which provides that "claim against the debtor" includes "claim against property of the debtor." In order for a claim of any sort to exist, the claimant must be able to assert a right to payment, collectible either against the debtor or property of the debtor. But the tax purchasers in this case can assert no such right. Wells Properties had a right to *tender* payment, and thereby redeem the property, but the tax purchasers have no right to demand payment of any sum, either from the debtor or its property. *See* D. Karlen & R. Slutzky, "Tax Collection and Methods of Enforcement" ¶ 5.44 in *Real Estate Taxation* (Ill. Inst. for CLE, 1987) (listing rights of holder of certificate of purchase); *see also, Morgan v. Clayton,* 61 Ill. 35, 45 (1871) ("No mortgagor is under any obligation to redeem the mortgaged premises. It is his right which he can elect to exercise or omit.").

If there is no redemption, and the holder of the certificate of purchase fails to obtain a tax deed within the prescribed time, the holder is left with no relief whatever; the certificate simply becomes void. Revenue Act § 271, Ill.Rev.Stat. ch. 120, ¶ 752. On the other hand, if the holder of the certificate does obtain a tax deed, the holder

---

5. If the tax purchasers did in fact have claims based on their certificates of purchase, they would be required to file proofs of claim in this case, since Wells Properties has not scheduled their claims. *See* 11 U.S.C. 1111(a). If the putative claims were allowed, pursuant to Sec-

tion 502 of the Bankruptcy Code, then, unless the case were dismissed or converted, the claims would have to be dealt with in a plan of reorganization, subject to confirmation by the court. 11 U.S.C. §§ 1128–29.

takes title to the property, even though that property may be worth far more than the taxes and penalties that were paid in order to obtain the certificate. There is no right to payment from the owner of the property, and no limitation of the amount recovered from the property itself.[6] Hence, as defined by the Bankruptcy Code, there is no claim here, and the Bankruptcy Code, by specifying the amounts of allowable "claims," does not in any way affect the amount needed to redeem property from a tax sale.

■ The other argument made by those supporting the attempted redemption is that the Illinois Revenue Act itself does not provide for the accruing of interest, penalties and costs during an extension of the period of redemption effectuated by Section 108(b) of the Bankruptcy Code. In making this argument, the parties have assumed that Illinois law governs the question of what interest and other costs accrue during the 108(b) extension, and this assumption appears to be correct. The flaw in the argument made by the parties supporting the redemption in the present case is in their assumption that state law must explicitly provide for interest or penalties during an extension effectuated by Section 108(b). Although there appear to be no reported decisions dealing with the question, Section 108(b), by its terms, is limited in its impact to extending the period of time in which a trustee (or debtor in possession) may take action to preserve rights of the estate; it has no impact on the terms under which the right may be exercised.[7]

Thus, if the debtor had a right under state law to redeem delinquent property for a flat payment, without interest or penalty, which right expired on the day a Chapter 11 bankruptcy case was filed, the right to redeem would be extended by Section 108(b) for sixty days, with no change in the payment. However, if redemption were set by state law at a certain sum with interest or penalties, then the interest and penalties would continue to accrue during any period of extension under Section 108(b).

In this case, the relevant state law is Section 253 of the Revenue Act, Ill.Rev. Stat. ch. 120, ¶ 734, which sets forth all of the terms and conditions for redemption. This section sets forth two different measures of the cost of redemption. The first measure of cost applies to the initial period of redemption for the property in question, and is the subject of the first paragraph of the section; the second measure of cost applies after the expiration of the initial redemption period, and is governed by the third paragraph of the section.

In the present case, the initial period of redemption expired (on February 17, 1989) before the filing of the Chapter 11 petition, and so the costs of redemption were then being determined under the second measure of cost—applicable during extensions of the initial period. Section 108(b) then extended that period, and the cost of redemption should therefore be determined

---

**6.** The Illinois Supreme Court summarized the rights of the holder of a certificate this way:

> If the redemption period expires without a response from parties interested in the real estate, the tax buyer may apply for a deed to the property.... The end result of such proceedings strikes many as harsh because the tax buyer can gain title to the real estate for a fraction of its value. However, this process has been upheld in light of the State's compelling interest in collecting taxes [Citations omitted.] The tax buyer also takes a certain risk each time he or she bids on a parcel of land at a tax sale. The tax buyer must pay the delinquent taxes and can only recover his or her investment by the owner redeeming and paying the tax buyer the delinquent amount plus the penalty, interest, and costs, or by

selling the property after the redemption period has expired.

*Rosewell v. Chicago Title & Trust Co.,* 99 Ill.2d 407, 411, 76 Ill.Dec. 831, 833, 459 N.E.2d 966, 968 (1984).

**7.** Section 108(b) provides, in pertinent part:

> [I]f applicable nonbankruptcy law ... fixes a period within which the debtor ... may ... cure a default, or perform any other similar act, and such period has not expired before the date of the filing of the petition, the trustee may only ... cure, or perform, as the case may be, before the later of—
> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
> (2) 60 days after the order for relief.

according to the second measure of cost of redemption set forth in Section 253. This second measure of cost states that during the extended period, redemption requires payment of:

[1] the amount for which the property was sold, [2] the penalties provided herein for the initial redemption period of the sale together with interest thereafter at 6% per annum on the face amount of tax sales, and [3] subsequent taxes, special assessments, fees of the registrar of titles and costs and expenses of receivership paid by the purchaser as provided in this Act, and [4] advertising fees and $5 costs.[8]

Thus, the six per cent interest appears to be a substitute for the penalty bid at the tax sale, and applies only to the face amount of the sale, while subsequent taxes are to be paid as provided in the first measure of cost of redemption.

At the request of a representative of the tax purchasers, made several days after the attempted redemption, the staff of the County Clerk prepared a hypothetical calculation of the sum required to redeem 201 North Wells, assuming that the period of redemption had been voluntarily extended to April 28, 1989, the date of the attempted redemption. These calculations were admitted into evidence as Exhibits WP–33 and WP–34. In these calculations, the clerk added [1] the amount for which 201 North Wells was originally sold at the tax sale, [2] the penalties provided during the initial period of redemption, together with interest thereafter at six per cent per annum (the clerk actually used ½% per month or fraction thereof), [3] subsequent taxes paid, with the penalties imposed by the first paragraph of Section 253, and [4] various fees and costs. The calculation appears to be in conformity with Section 253.

**8.** Like much of Section 253, the measure of cost of redemption following the expiration of the initial period of redemption has been made more difficult to understand by virtue of amendatory insertions. The four-part framework of this measure of cost (indicated by the brackets inserted above) is more apparent when it is compared to an earlier, simpler version. As set forth in Laws of Illinois, 1933, p. 923, § 1 at 924, this provision required payment of:

The calculations total $1,063,690.68, the amount suggested by the tax purchasers.

Because Section 108(b) of the Bankruptcy Code merely extended the period of redemption, without affecting the interest and penalties accruing under Illinois law, the sum of $1,063,690.68 was in fact the proper redemption amount.

■ **3. The redemption was effective, despite an inadequate tender, due to the good faith reliance of Wells Properties on advice of the County Clerk.** As noted above, Wells Properties, in attempting to redeem 201 North Wells, did not tender $1,063,690.68 to the County Clerk on April 28, 1989. Instead, Wells Properties tendered, and the Clerk accepted, $1,053,974.20, the amount the Clerk had estimated would have been required to redeem the property on February 28, 1989. Under Illinois law, the reason for this error determines whether the attempted redemption is effective despite the error.

More than a hundred years ago, the Illinois Supreme Court first decided a case in which an inadequate redemption amount was accepted by the County Clerk, under a statutory scheme that employed essentially the same procedure as does the one involved in the present case. *Gage v. Scales,* 100 Ill. 218 (1881). The court excused the inadequate payment, and upheld the redemption (conditioned on payment to the tax purchasers of the shortage, with interest) because of the Clerk's mistake in directing and accepting payment of the inadequate amount. The principles announced by the Court bear quotation in full.

It is true that appellees, on making the redemption, did not comply strictly with the requirement of the statute, as they failed to pay to the clerk a subsequent tax which had been paid by appellant

[1] the amount for which the said property was sold, [2] the penalties provided herein for the two years after sale, together with interest thereafter at six per cent per annum on the face amount of such tax sales, and [3] subsequent taxes and special assessments paid by the purchaser, as herein provided, [4] advertising fees and five dollars costs.

while he held the tax certificate. But ... appellees called upon the county clerk, whose duty it was to inform them of the amount necessary to be paid to make the redemption, and whose duty it was to receive the money, and ... the full amount which this officer required was paid, and upon the receipt of the money he issued a certificate of redemption, which was delivered to appellees. Here was a mistake of an officer for which appellees were in no manner responsible. For this mistake shall they lose their land, or is it within the power of a court of equity to relieve as against that mistake, and thus protect appellees in the title to their land?

Cooley, in his work on Taxation, in discussing this subject, says: "Although redemption is a statutory right, yet a party attempting in good faith to make it, may be relieved against the mistakes or frauds of the officer or of the purchaser. If he has attempted to redeem, and done all he was required to do by those entitled to receive the money, the sale is discharged, even though in consequence of the mistake of the officer he has paid less than the proper amount."

Here it is apparent the redemption was made in perfectly good faith. The money was paid to the proper officer, and the amount required by him, in the full belief that the sum paid was all that was necessary to redeem the land from the sale. We think the attempted redemption was sufficient to authorize a court of equity to grant relief against the mistake of the clerk. Under section 210 of the Revenue law, the county clerk is the officer whose duty it is to receive from the owner of real estate sold for taxes the redemption money. It is no part of his duty to receive such a sum as the owner may see fit to pay, but, on the other hand, it is his duty to furnish the owner with a statement of the amount required to make the redemption, and he is under no obligation to accept a less amount than the law requires to effect a redemption.

100 Ill. at 224–25.[9] It is noteworthy that this decision was rendered in the face of an argument that "[a]ppellees were sufficiently advised to put them upon inquiry as to whether they were depositing the proper amount, and if they neglected to make the necessary inquiries, the loss must fall upon them." 100 Ill. at 220.

*Gage v. Scales* remains the law of Illinois, having been followed most recently in *In re Application of County Treasurer*, 171 Ill.App.3d 644, 121 Ill.Dec. 545, 525 N.E.2d 852 (1987), in which a mistake by the County Clerk in estimating the amount necessary to redeem property from a tax sale was found sufficient grounds for vacation of a tax deed in a collateral proceeding, even though there is a public policy in Illinois "favoring the merchantability of tax deeds in collateral cases." 171 Ill. App.3d at 648, 121 Ill.Dec. at 547, 525 N.E.2d at 854. Again, this result obtained despite an argument that the owner of the property had a basis for knowing that the clerk's figures were incorrect. *Id.* Nor does it matter whether the mistake of the clerk is as to a matter of fact or of law. In *In re Application of Williamson County Collector*, 128 Ill.App.3d 408, 83 Ill.Dec. 773, 470 N.E.2d 1193 (1984), the court allowed a redemption to be effected by a personal check, contrary to statutory provision, even though the check failed to clear, because the clerk mistakenly accepted the check and issued a certificate of redemption. The court noted that "[t]he entire problem would have been avoided had the clerk required redemption by one of the methods of payment set out in the statute." 128 Ill.App.3d at 410, 83 Ill.Dec. at 775, 470 N.E.2d at 1195. Finally, all of the cases involving mistakes by the clerk are consistent with the general, and often-expressed policy of Illinois law that "redemption, although a statutory privilege and to be exercised in substantial compliance with the

---

**9.** The current Illinois law makes even more appropriate reliance on the clerk to establish the amount required to redeem. Notices required by the Revenue Act to be sent to parties interested in the property direct the recipients to "[c]heck with the county clerk as to the exact amount you owe before redeeming." Revenue Act §§ 241a, 263, Ill.Rev.Stat. ch. 120, ¶¶ 722a, 744.

statute, is nevertheless looked upon with favor and unless injury is to result to the purchaser at the sale a liberal construction will be given redemption laws." *Mohr v. Sibthorp*, 395 Ill. 418, 424, 69 N.E.2d 487, 490 (1946) (redemption from sheriff's sale); *Skach v. Sykora*, 6 Ill.2d 215, 224, 127 N.E.2d 453, 457 (1955) (redemption from mortgage foreclosure sale); *County Collector of DuPage County v. Bodoh*, 98 Ill.App.3d 950, 952, 54 Ill.Dec. 301, 304, 424 N.E.2d 1204, 1207 (1981) (redemption from tax sale).[10]

Based on these decisions, there appears to be a well-established rule in Illinois that if a redemption of property from a tax sale is attempted in good faith by the tender of the amount required by the county clerk, then an insufficiency in the amount will not prevent the redemption from being effective, even if the party attempting redemption was aware of facts that would have indicated the correct amount.

According to testimony presented by Wells Properties at the hearing in this matter, such a good faith tender occurred here. Mark Olander, a partner at the firm representing Wells Properties in its bankruptcy case, testified that, on April 21, 1989, he was given the responsibility of determining the amount that would be required by the County Clerk to redeem 201 North Wells. He testified to several meetings with personnel from the Clerk's office during the following week, in which he was unable to obtain a current estimate of cost of redemption. However, according to Mr. Olander, his efforts finally resulted in a meeting on April 27, with Elizabeth Iovino, the cashier of the Clerk's accounting department, whose duties included supervising the tellers who would receive a tendered redemption payment. According to Mr. Olander, Ms. Iovino told him that the Clerk's office would accept a written estimate of redemption that it had prepared for February 28, 1989, the date on which the period of redemption would have expired but for the bankruptcy filing, as long as he supplied a court order indicating that

there was a "60-day stay" of the period of redemption. Based on this assurance, Mr. Olander testified, he arranged for checks to be drawn in accordance with the Clerk's ·earlier estimate of the cost of redemption, and he tendered these checks to the Clerk on the following day, together with the court order approving the sale, and the estimate of redemption prepared for February 28. Mr. Olander supplied time records and contemporary notes to support his testimony.

However, this testimony is controverted. The tax purchasers presented the testimony of several of the employees of the Clerk's office with whom Mr. Olander said he discussed his need for an updated estimate of the cost of redemption. None of them recalled talking with Mr. Olander during the week of April 24, until the time of the attempted redemption on April 28. One employee testified that part of the interaction described by Mr. Olander (a discussion regarding the impact of the Wells Properties bankruptcy) could not have taken place. The tax purchasers also point to the absence of any definitive documentary evidence that Mr. Olander obtained any statement from the Clerk's office as to the amount it would accept in redemption before the tender was actually made. Finally, the tax purchasers suggest that the only reason for the Clerk accepting the funds tendered by Wells Properties on April 28 was this Court's order of April 27, which the tax purchasers interpret as directing the Clerk to accept funds in the amount tendered.

There is, in fact, a conflict in the testimony. It is difficult to imagine that Mr. Olander had all of the conversations to which he testified with members of the Clerk's staff, some of which involved extraordinary requests on his part and responses on theirs, without their remembering any of these conversations. Nevertheless, this court finds that he did in fact have numerous conversations with employees of the Clerk's office during the week of April 24, in an attempt to ascertain the amount that

---

**10.** In contrast to other redemption, redemption from tax sales is also a right protected by the Illinois Constitution. Ill. Const. Art. IX, § 8(b)(1).

that office would accept for redemption of 201 North Wells. The court further finds that Mr. Olander was told by an employee of the Clerk's office, prior to April 28, that the amount that the Clerk's office had required for a redemption on February 28 would be accepted by the Clerk on April 28, provided that a court order indicated that the period of redemption had been extended to that date.

The court reaches this conclusion in light of several factors:

- First, the court credits the testimony of Mr. Olander's supervising partner, Edward Proctor, that Mr. Olander was assigned the task of obtaining the Clerk's estimate of the amount needed to redeem 201 North Wells as of April 28, and that Mr. Proctor consulted with Mr. Olander about his efforts in this regard during the week of April 24.

- Second, although Mr. Olander may have exaggerated (perhaps unintentionally) the extent of his contacts with Clerk's office personnel, the court cannot find that he deliberately created false time records and notes to support an entirely fabricated story, which the tax purchasers' view of the facts would require. To the contrary, the court finds Mr. Olander's testimony in its general outline, entirely credible.

- Third, in contrast to Mr. Olander, for whom this was a unique and significant transaction, the employees of the Clerk's office acknowledged, for the most part, that the volume of their work makes it possible that they could have forgotten particular conversations with Mr. Olander regarding this matter.

- Fourth, employees of the Clerk's office who assisted Mr. Olander in determining what would be required for redemption may have feared that they exceeded their authority in so doing, and hence have been reluctant to testify about the subject. (Ms. Iovino, for example, testified that she could not legally give advice about the right to redeem delinquent property after the period of redemption had expired under Illinois law.)

- Fifth, this Court's order of April 27 would not have required the Clerk to accept the amounts tendered by Wells Properties had the Clerk believed these amounts to be inadequate. The paragraph of the order directing the clerk to accept checks (¶ 7) stated no amount that the Clerk was required to accept. Rather, that paragraph simply directed acceptance of "the Checks," referring to earlier paragraphs (¶¶ 4–5) in which the checks were described. The earlier paragraphs, in turn, specified that the checks should be in the amounts tendered by Wells Properties or "in such other amounts as are required to redeem the delinquent real estate taxes."

- Sixth, the advice that Mr. Olander testified he received from Ms. Iovino was in fact a correct statement of the policy of the Clerk's office with respect to redemptions during an extension of the redemption period pursuant to Section 108(b) of the Bankruptcy Code. Ronald Bennett, supervisor of the tax redemption department of the Clerk's office, whose duties include preparation of estimates of the cost of redemption, testified that his office had dealt with 108(b) extensions previously, and that it had a policy as to the amount required for redemption in such circumstances: that the amount required for redemption on the last day of the period of redemption would be required during any period of extension called for by the Bankruptcy Code, i.e., that interest and penalties do not continue to accrue during the 108(b) extension. Thus, Mr. Bennett testified that the attempted redemption in this case was entirely in accordance with the policies of his office.

- Finally, there is no reason why the attorneys for Wells Properties would have tendered to the County Clerk any amount less than they believed would be required to redeem the property. The $9700 difference between the amount calculated by the tax purchasers and the amount actually tendered is insignificant in the context of these proceedings. Wells Properties was attempting to redeem property for which it was to be paid $5.25 million, and it had $1.1 million on hand with which to effectuate the redemption.

In light of these findings, the court concludes that Wells Properties did tender its payment of $1,053,974.20 to the Clerk's office on April 28, 1989, in good faith reliance on advice by the Clerk's office as to the amount necessary for redemption. The court further finds that the tax purchasers are entitled to be paid by Wells Properties the difference between this amount and $1,063,690.68, the correct redemption amount, with interest from April 28, 1989 until the date of payment, at the prime rate. *See In re Estate of Wernick*, 127 Ill.2d 61, 87, 129 Ill.Dec. 111, 123, 535 N.E.2d 876, 888 (1989) (prime rate approved as an equitable award of prejudgment interest to compensate "[t]he injured party for any economic loss occasioned by the inability to use his money.") Upon this payment, the court finds, finally, that the tax purchasers will not be injured by the error of the Clerk in accepting the inadequate payment.

## CONCLUSION

For the reasons stated above, an order will be entered denying the motion of the tax purchasers for leave to proceed in state court to obtain expungement of the redemption, conditioned on the payment of $9,716.48, with interest at the prime rate from April 28, 1989.