(No. 59336.—

EDWARD J. ROSEWELL, Appellee, v. CHICAGO TITLE AND TRUST COMPANY *et al.*, Appellants.

*Opinion filed January 20, 1984.*

Maurice P. Raizes, of Cohon, Raizes & Regal, of Chicago, for appellant Chicago Title and Trust Company.

Marshall Patner, of Orlikoff & Patner, of Chicago, for

appellant Frederick Blum.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey, Deputy State's Attorney, and Henry A. Hauser, Thomas J. McNulty, and Patrick J. McNerney, Assistant State's Attorney, of counsel), for appellee.

Arnold M. Flamm, of Chicago, for *amicus curiae* Aggressive Investors, Inc.

JUSTICE CLARK delivered the opinion of the court:

On November 4, 1983, appellee, Edward Rosewell, treasurer and collector of Cook County, filed an application in the circuit court of Cook County seeking an order of judgment and sale against approximately 121,000 parcels of real estate which had been returned delinquent for the nonpayment of 1982 real estate taxes. This action was taken in accordance with section 235 of the Revenue Act of 1939 (Ill. Rev. Stat. 1981, ch. 120, par. 716). On November 10, 1983, appellant Chicago Title and Trust Company filed an objection to the application on the grounds that the proposed tax sale violated the due process clause of the United States Constitution (U.S. Const., amend. XIV (the State may not deprive any person of life, liberty or property without due process of law)) and the Illinois Constitution (Ill. Const. 1970, art. I, sec. 2). On November 16, 1983, taxpayer Frederick Blum filed an objection on the same grounds as Chicago Title and Trust, as well as the alleged violation of his constitutional rights pursuant to 42 U.S.C. sec. 1983 (1976). The circuit court granted Rosewell's motion to dismiss and entered an order on November 18, 1983, permitting the tax sale to take place. We granted appellants' motion for direct appeal pursuant to Rule 302(b) (87 Ill. 2d R. 302(b)) and stayed enforcement of the circuit court's order pending the outcome of the expedited hearing before this court.

This appeal requires us to answer the question

whether due process requires the county collector to give personal notice of an impending tax sale to all parties with an interest in the real estate. The tax sale procedure under scrutiny is a mechanism for the county to collect delinquent real estate taxes after conventional means of collecting the tax have failed. In Illinois, real estate taxes become a prior lien against the land on January 1 of each year. (Ill. Rev. Stat. 1981, ch. 120, par. 697.) The assessee receives notice by mail of the tax liability on an annual basis. Individuals who do not pay their annual real estate taxes are notified of the impending tax sale by certified mail at least 15 days before the application for judgment is to be filed with the circuit court. (Ill. Rev. Stat. 1981, ch. 120, pars. 706, 711.) The collector is also required to publish notice of an intent to file the application in a newspaper at least 10 days before the application is filed with the circuit court.

If the trial court grants the collector's application, the delinquent property is offered for sale at a public auction. A certificate of sale for each delinquent parcel of real estate is awarded to each successful bidder. The successful bidder is the party who is willing to pay the delinquent tax and accept the lowest penalty rate below 18%. (Ill. Rev. Stat. 1981, ch. 120, par. 726.) The owner of the property, or other interested party, may still redeem the property within two years of the tax sale by paying the delinquent tax plus a penalty, interest, and costs.

The tax buyer must file a petition for tax deed in the circuit court no more than five months nor less than three months before the redemption period expires. At this time, the tax buyer must serve notice upon all owners, occupants and parties interested in the real estate. The Revenue Act of 1939 requires personal notice by the sheriff, certified mail *and* three publications in a newspaper. (Ill. Rev. Stat. 1981, ch. 120, par. 744.) It is crucial

to note that this notice differs from the notice provided before the tax sale. The Illinois statute requires that notice by mail must be given only to the party against whom the property taxes were assessed before the tax sale. Notice by publication is provided for all other interested parties.

If the redemption period expires without a response from parties interested in the real estate, the tax buyer may apply for a deed to the property after proving compliance with statutory service requirements. (Ill. Rev. Stat. 1981, ch. 120, par. 747.) The end result of such proceedings strikes many as harsh because the tax buyer can gain title to the real estate for a fraction of its value. However, this process has been upheld in light of the State's compelling interest in collecting taxes. (*Balthazar v. Mari, Ltd.* (N.D. Ill. 1969), 301 F. Supp. 103, *aff'd* (1969), 396 U.S. 114, 24 L. Ed. 2d 307, 90 S. Ct. 397; *Catoor v. Blair* (N.D. Ill. 1973), 358 F. Supp. 815, *aff'd* (1973), 414 U.S. 990, 38 L. Ed. 2d 231, 94 S. Ct. 345.) The tax buyer also takes a certain risk each time he or she bids on a parcel of land at a tax sale. The tax buyer must pay the delinquent taxes and can only recover his or her investment by the owner redeeming and paying the tax buyer the delinquent amount plus the penalty, interest, and costs, or by selling the property after the redemption period has expired.

Constitutional standards of due process were delineated by the United States Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 314-15, 94 L. Ed. 865, 873, 70 S. Ct. 652, 657:

> "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.] The notice must be of such nature as reasonably to convey the required information

\*\*\* But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied."

Originally, different standards of due process applied to *in personam* and *in rem* actions (*Pennoyer v. Neff* (1878), 95 U.S. 714, 24 L. Ed. 565), but this distinction was abolished by *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569. Now, due process requires that the *Mullane* standard be applied to both *in personam* and *in rem* proceedings.

The most important criterion in the area of procedural due process is "reasonableness." The State must act reasonably before depriving a person of a property interest, but burdensome or elaborate efforts to notify interested parties are not constitutionally required. (See *Walker v. City of Hutchinson* (1956), 352 U.S. 112, 1 L. Ed. 2d 178, 77 S. Ct. 200; *Greene v. Lindsey* (1982), 456 U.S. 444, 72 L. Ed. 2d 249, 102 S. Ct. 1874; see also Note, *Due Process in Tax Sales in New York: The Insufficiency of Notice by Publication*, 25 Syracuse L. Rev. 769 (1974).) Indeed, Justice John Marshall stated that, "it is the part of common prudence for all those who have any interest in [property], to guard that interest by persons who are in a situation to protect it." *The Mary* (1815), 13 U.S. (9 Cranch) 126, 144, 3 L. Ed. 678, 684.

The basic contention projected in this appeal is that mortgagees and other interested parties should be given the same notice as assessees before a tax sale takes place. The current Illinois statute provides for notice by mail to the assessee before the tax sale. We find this statutory provision entirely consistent with the due process standards in *Mullane* and its progeny. The name and address of the party against whom the taxes were last assessed is readily available in the county tax records; the addresses of all mortgagees, lienholders and other interested parties can only be ascertained by costly and time-consuming title searches on the 121,000 delinquent parcels of land. At the

present time, this expense is borne by the tax buyer who must comply with stringent statutory notice requirements before the end of the redemption period. It is true that the mortgagee has to pay a penalty to redeem the property after the tax sale, but such a penalty is fair and reasonable when dealing with a party that has neglected to ensure that the mortgagor has paid the taxes when due. For example, the Internal Revenue Service does not provide notice to taxpayers before assessing a penalty. It is a matter of public knowledge that all wage earners must file a tax return.

Similarly, Illinois permits mortgagees to avoid forfeiture by providing an opportunity to pay the delinquent property taxes plus a percentage penalty. In *Mullane*, the court noted, "Where the names and post-office addresses of those affected by a proceeding are at hand, the reasons disappear for resort to means less likely than the mails to apprise them of its pendency." (*Mullane v. Central Hanover Bank & Trust Co.* (1950), 339 U.S. 306, 318, 94 L. Ed. 865, 875, 70 S. Ct. 652, 659.) In the case at bar, the names and addresses of mortgagees are not readily at hand, but can only be gleaned from a paper mountain by 121,000 title searches. Even if the costs of a title search were passed onto the "consumer," the collector would be faced with a chaotic situation, with tax sales delayed by at least six months while all the title searches were analyzed.

The Supreme Court underscored this consideration when it noted:

"We do not suggest, however, that a governmental body is required to undertake extraordinary efforts to discover the identity and whereabouts of a mortgagee whose identity is not in the public record." *Mennonite Board of Missions v. Adams* (1983), 462 U.S. ___, ___ n.4, 77 L. Ed. 2d 180, 187 n.4, 103 S. Ct. 2706, 2711 n.4.

We contrast this with the minimum amount of effort that it would take the mortgagee to learn of the impending tax sale. The parcels that will be offered at the tax sale

are listed by tax number in numerical order when published in the newspaper prior to the proposed sale. A mortgagee or lienholder with the remotest interest in a parcel of land could ascertain the tax delinquency in a few minutes. Indeed, it is usually only the negligent or disorganized mortgagee who learns of the tax sale during the redemption period. We conclude that the Revenue Act of 1939 is consistent with the due process criteria set down in *Mullane* and its progeny.

The appellants argue that *Mennonite Board of Missions v. Adams* (1983), 462 U.S. ____, 77 L. Ed. 2d 180, 103 S. Ct. 2706, provides good authority for overturning the Illinois statute. In *Mennonite*, the United States Supreme Court invalidated an Indiana statute that did not provide for notice by mail or personal service to mortgagees of property that had been sold for nonpayment of taxes. The *Mennonite* court noted that the Indiana statute "immediately and drastically diminished" the value of the mortgagee's security interest. (462 U.S. ____, ____, 77 L. Ed. 2d 180, 187, 103 S. Ct. 2706, 2711.) We read *Mennonite* as a decision in line with *Mullane* and its vitality is limited to statutes such as Indiana's that afford inadequate due process protection.

The Illinois statute is clearly distinguishable from the Indiana statute. First, the Indiana statute allowed the tax sale to take place without any judicial proceeding. In Illinois, a circuit court judge must order the tax sale after considering an application from the county collector and any objections from interested parties. In Illinois, there is no drastic diminution of the mortgagee's security interest because taxes are a prior lien before and after the tax sale. Second, Indiana permitted the property to be sold to the highest bidder, an amount which could be greater than the amount of the delinquent taxes, whereas, in Illinois, the amount could not be greater than the delinquent taxes, plus interest, penalty and costs. Third, the Indiana statute

granted a lien against the real property for the entire amount paid at the tax sale rather than the amount of the delinquent taxes. In Illinois, the amount of the lien is limited to the amount of the tax deficiency, plus interest, penalty and costs. Finally, Indiana permitted a deed to issue to the tax buyer automatically at the end of the redemption period, while Illinois requires a second judicial proceeding after all interested parties have received notice by mail. In Indiana, the property could be irrevocably lost without notice, a result that is impossible in Illinois. We also note that the Illinois statute has been affirmed by the United States Supreme Court on two occasions (*Balthazar v. Mari, Ltd.* (N.D. Ill. 1969), 301 F. Supp. 103, *aff'd* (1969), 396 U.S. 114, 24 L. Ed. 2d 307, 90 S. Ct. 397; *Catoor v. Blair* (N.D. Ill. 1973), 358 F. Supp. 815, *aff'd* (1973), 414 U.S. 990, 38 L. Ed. 2d 231, 94 S. Ct. 345.

We do not agree with defendant's argument that cases decided subsequent to *Mennonite* erode the validity of the Illinois statute. The United States Supreme Court vacated three lower court decisions in light of *Mennonite*: *First Pennsylvania Bank, N.A. v. Lancaster County Tax Claim Bureau* (1983) (mem.), 463 U.S. ___, 77 L. Ed. 2d 1381, 103 S. Ct. 3528, *Russell Creek Land Co. v. Charjuan, Inc.* (1983) (mem.), 463 U.S. ___, 77 L. Ed. 2d 1382, 103 S. Ct. 3529-30, and *Continental Insurance Co. v. Moseley* (1983) (mem.), 463 U.S. ___, 77 L. Ed. 2d 1383, 103 S. Ct. 3530. However, careful examination of the statutes construed in these cases reveals that they are substantially deficient in due process protection under *Mullane* as well as *Mennonite*. For example, *Lancaster* and *Continental Insurance* are based on statutes that provide for notice only by publication, a situation not remotely analogous to the case at bar. We are more persuaded by the decision of the Oregon Supreme Court in *Grant County v. Guyer* (1983), 296 Or. 14, 672 P.2d 702, which upheld the Oregon tax sale statute in light of *Mennonite*.

*Mennonite* does contain *dicta* that emphasizes the need for prompt notice to the mortgagee, but this *dicta* concedes that constructive notice is constitutionally sufficient if the mortgagee is not *reasonably identifiable*. (Emphasis added.) The court noted:

"When the mortgagee is identified in a mortgage that is publicly recorded, constructive notice by publication must be supplemented by notice mailed to the mortgagee's last known available address, or by personal service. But unless the mortgagee is not reasonably identifiable, constructive notice alone does not satisfy the mandate of *Mullane.*" (*Mennonite Board of Missions v. Adams* (1983), 462 U.S. ____, ____, 77 L. Ed. 2d 180, 187, 103 S. Ct. 1706, 2711.)

As we have previously stated herein, notice by mail is given to the mortgagee prior to the expiration of the redemption period.

Although we can detect no due process infirmities with the Illinois statute, we are also mindful of the enormous public policy considerations underpinning the tax sale procedure. Tax revenues are literally the lifeblood of government. At no time since the great depression have the fiscal necessities of government at all levels and the need for dependable tax collections been greater than at present. *Township of Montville v. Block 69 Lot 10* (1977), 74 N.J. 1, 31, 376 A.2d 909, 924 (Conford, J., dissenting): see also Comment, *Notice by Publication: Walker v. City of Hutchinson*, 24 U. Chi. L. Rev. 553 (1957); Note, *The Constitutionality of Notice by Publication in Tax Sale Proceedings*, 84 Yale L.J. 1505 (1975).

Since we have addressed the merits of this appeal, we have no occasion to address the issue of standing raised by appellant Blum. We therefore conclude that the notice provisions of the Revenue Act of 1939 are consistent with due process protection afforded by the United States Constitution and the Illinois Constitution. We now vacate the stay order granted pending the outcome of this appeal, and

affirm the judgment of the circuit court of Cook County.

*Judgment Affirmed.*