188 Ill. App.3d 1068 (1989)
545 N.E.2d 145
In re APPLICATION OF THE COUNTY COLLECTOR FOR JUDGMENT AND ORDER SALE AGAINST LANDS AND LOTS RETURNED DELINQUENT FOR NONPAYMENT OF GENERAL TAXES FOR THE YEAR 1982 AND PRIOR YEARS (National Indemnity Corporation, Petitioner-Appellee,
v.
Eleanor Otsus, by her Guardian, Patrick T. Murphy, Public Guardian of Cook County, Respondent-Appellant).
No. 1-88-0929.
Illinois Appellate Court  First District (2nd Division).
Opinion filed August 29, 1989.
Rehearing denied November 1, 1989.
*1069 Patrick T. Murphy, Public Guardian, of Chicago (Thomas L. Cowlin, of counsel), for appellant.
Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Mark R. Davis, and Karen J. Dimond, Assistant State's Attorneys, of counsel), for appellee Edward J. Rosewell.
Byron L. Landau and Richard J. Briski, both of Landau, Omahana & Kopka, of Chicago, for appellee National Indemnity Corporation.
Judgment reversed.
JUSTICE SCARIANO delivered the opinion of the court:
Patrick Murphy, the Cook County Public Guardian (hereinafter the Guardian), appeals from the denial of his motion for declaratory judgment, filed on behalf of Eleanor Otsus in response to National Indemnity Corporation's petition for an order directing the county clerk to issue a tax deed conveying Otsus' property, arguing that the notice provisions of the Illinois Revenue Act of 1939 (Ill. Rev. Stat. 1987, ch. 120, par. 482 et seq.) are unconstitutional and violate due process.
Mrs. Otsus failed to pay real estate taxes on the property she owned at 2938 W. 102nd Place in Evergreen Park, Illinois, for the year 1982 and prior years. Since her husband's death in 1970, Mrs. Otsus has lived in reclusion, and has become increasingly mentally imbalanced and deranged. She is now 87 years old.
On October 3, 1984, National Indemnity Corporation (National) purchased Mrs. Otsus' property at a tax sale for approximately *1070 $8,600, the amount of the real estate taxes owed on the property for the years in question. Pursuant to the notice provisions of the Illinois Revenue Act (Ill. Rev. Stat. 1987, ch. 120, pars. 722a, 744, 747), National served Mrs. Otsus personally with notice on March 16, 1987, as well as by publication. The return of service indicates that the sheriff believed Mrs. Otsus did not speak English, when in fact she does. National also provided notice of the proceedings to the Village of Evergreen Park and the PLOWS Council on Aging. (PLOWS is not further identified in the record.) Mrs. Otsus' right to redeem the property expired on July 6, 1987, and she did not redeem before that date. She became a ward of the Cook County Public Guardian on July 21, 1987. The guardian claims that the property alone, without the house, which was in a deteriorated condition, was worth at least $100,000.
On October 29, 1987, the Guardian filed a motion for declaratory judgment, in which he quoted from a report by the PLOWS Council on Aging, prepared in July 1987. (A copy of this report is not included in the record.) According to the report, as quoted in the Guardian's motion, PLOWS has known Mrs. Otsus since August 1983, "when she was referred by a concerned neighbor. She was living without heat, electricity, water or phone service, and according to neighbors had been deteriorating for some period of time." Mrs. Otsus would not open her door to speak with people from PLOWS, and the outside of her home was in "total disrepair." PLOWS reported that "Mrs. Otsus was paranoid, uncooperative and refused offers of help." The agency attempted to assist Mrs. Otsus, but, because of her diminished capacity and lack of cooperation, her utility bills continued to go unpaid and, in January 1986, she almost froze to death. A neighbor and local church group gained access to Mrs. Otsus' home and found it "a disaster." Her mail was either unopened or burned in her fireplace. According to the report, "It is clear that Mrs. Otsus has had severely impaired mental functioning for a considerable period of time  perhaps ten years or longer. She is not able to understand the consequences of her actions and even in a life threatening situation was unable to make a decision in her own best interest. Mrs. Otsus has a total inability to understand any correspondence that may have been sent to her regarding the tax delinquency and in fact, left unopened all mail except her Social Security check."
In denying the Guardian's motion for declaratory judgment, in which he argued that the notice provisions of the Revenue Act are unconstitutional, the trial judge stated:

*1071 "My ruling is based on my perception of the Revenue Act, the purpose I believe it is designed to achieve, that is providing funds for the operation of government. What we are doing in this legislation, I mean the General Assembly has sought to balance the rights of people as a whole organized as a society to provide revenue for the functions of government that they have constituted as against the rights of certain individuals. * * * [T]he courts of Illinois, including our supreme court, have considered the Revenue Act, and its sometimes harsh provisions with regard to the consequences of failure to pay real estate taxes, but the General Assembly has seen fit to delegate the responsibility for processing the obtaining of the delinquent revenues to private parties, in this case National Indemnity. They have not assumed it as a governmental obligation, but rather have seen fit to delegate the responsibility for seeing that the proper notices and other procedural work requirements are met by private parties, but let's assume the General Assembly had a purpose in mind when it chose that formula. * * * [T]he General Assembly may have determined that this formula or method is the most efficient that it can devise for the generation of the needed revenue to fund government.
* * *
Mr. Murphy has called into question the effectiveness of [the notice provisions], and I can understand his argument, to reject it is not to argue that it may not have some merit, but to reject it here in this form is to suggest that the proper avenue is to seek relief from the General Assembly. I cannot find that the remedy provided by the General Assembly in this circumstance has reached * * * unconstitutional dimensions."
 1, 2 The notice provisions of the Revenue Act require that within five months of the tax sale, the purchaser deliver to the county clerk a notice that the property has been purchased and the date of expiration of the period of redemption, which notice is to be sent, either by registered or certified mail, to the party in whose name the taxes are last assessed. (Ill. Rev. Stat. 1987, ch. 120, par. 722a.) No less than three months nor more than five months prior to the expiration of the period of redemption, the purchaser must give notice of the sale and date of expiration of the period of redemption, "to the owners, occupants and parties interested in the premises," personally serving these individuals, as well as publishing a notice in "some newspaper [published] in the county," and mailing a copy of the notice by certified mail. (Ill. Rev. Stat. 1987, ch. 120, par. 744.) *1072 Notice of filing a petition for deed must also be served personally as well as published in a newspaper and mailed not less than three months prior to the date fixed for making application that a deed issue. (Ill. Rev. Stat. 1987, ch. 120, par. 747.)
"If the time of redemption expires and the real estate has not been redeemed from the sale and all taxes and special assessments which became due and payable subsequent to the sale have been paid and all forfeitures and sales which occur subsequent to the sale have been redeemed and the notices required by law have been given and the petitioner has complied with all the provisions of law entitling him to a deed, the court shall so find and shall enter an order directing the county clerk on the production of the certificate of purchase and a certified copy of the order, to issue to the purchaser or his assignee a tax deed." Ill. Rev. Stat. 1987, ch. 120, par. 747.
The Guardian argues that the provisions for notice in the Revenue Act are constitutionally insufficient, because the Act "fails to take into account that persons living in a unique situation of disability cannot tell the difference between a piece of paper claiming to serve legal notice for the loss of property and a pizza advertisement." He asserts that Mrs. Otsus was incapable of understanding and acting upon the notices given her, and he cites a number of cases in support of his argument that whether notice is adequate must be determined by the circumstances of each case.
 3 In Mullane v. Central Hanover Bank & Trust Co. (1950), 339 U.S. 306, 94 L.Ed. 865, 70 S.Ct. 652, the Supreme Court held that notice by publication was inadequate to inform known beneficiaries of a common trust fund of the proposed judicial settlement of certain accounts by the trustee stating:
"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. [Citations.] The notice must be of such nature as reasonably to convey the required information * * *. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the Constitutional requirements are satisfied. * * * [Citations.]
But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the [person] might reasonably *1073 adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected [citations] or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." (339 U.S. at 314-15, 94 L.Ed. at 873-74, 70 S.Ct. at 657-58.)
The Guardian asserts that, under the circumstances of this case, due process requires "much more than mailing a notice to an incompetent, publishing notice to an incompetent in the Law Bulletin and having an untrained sheriff stick a piece of paper into the face of an incompetent woman."
The Court considered the sufficiency of notice to an incompetent in Covey v. Town of Somers (1956), 351 U.S. 141, 100 L.Ed. 1021, 76 S.Ct. 724, which involved a proceeding by the town to foreclose a tax lien against a parcel of real estate owned by the incompetent. Notice was given to the incompetent taxpayer by mail, by posting a notice at the post office, and by publication in two local newspapers, as required by statute. No answer was filed and a default judgment was entered and a deed delivered to the town. By statute, the deed was presumptive evidence of the regularity of the proceedings. Five days later the taxpayer was "certified * * * as a person of unsound mind," and one week later she was committed to a hospital for the insane. (351 U.S. at 144, 100 L.Ed. at 1025, 76 S.Ct. at 726.) Covey was then appointed as "[c]ommittee of the person and property of the incompetent," and shortly thereafter his offer to repay the town the amount of taxes due on the property, in consideration of its return to the incompetent's estate, was refused. Covey then sought to vacate the default judgment, arguing that the notice given was inadequate "in the case of a known incompetent." (351 U.S. at 145, 100 L.Ed. at 1025, 76 S.Ct. at 726.) The Supreme Court held that compliance with the statutory notice provisions did not afford notice to the incompetent and that the taking of her property under such circumstances was a violation of due process. Of importance in the Court's decision was the fact that the incompetent was known by officials and citizens of the town "to be a person without mental capacity to handle her affairs or to understand the meaning of any notice served upon her," yet no attempt was made to have a committee appointed for her person or property until after entry of the judgment of foreclosure. (351 U.S. at 146, 100 L.Ed. at 1026, 76 S.Ct. at 727.) The Court stated: "Notice to a person known to be an incompetent *1074 who is without the protection of a guardian does not measure up to [the constitutional requirements as set forth in Mullane]." 351 U.S. at 146, 100 L.Ed. at 1026, 76 S.Ct. at 727.
 4 The Guardian also relies on Dale v. Hahn (2d Cir.1973), 486 F.2d 76, cert. denied (1974), 419 U.S. 826, 42 L.Ed.2d 50, 95 S.Ct. 44, where the issue was whether adequate notice had been given of the appointment of a committee to manage the affairs of an incompetent who was, at the time, committed to a State mental hospital. In its findings of fact, the trial court noted that the testimony "indicated either that appellee had not been served with notice of the proceeding at all, or that `it was handed to her in circumstances where its meaning did not get through to her.'" (486 F.2d at 78.) The appellate court held that the trial judge's finding that "the notice given was not reasonably calculated under the circumstances to apprise appellee of the fact that a substantial interest was involved" was not clearly erroneous (486 F.2d at 79), stating
"The premise underlying that finding is that there may be situations in which physical service of process will not constitute adequate notice. We are satisfied that such a premise is supported by the cases." 486 F.2d at 78.
The Guardian contends that there was clear evidence that Mrs. Otsus was disabled (e.g., the state of her home), and that by serving PLOWS, National demonstrated an awareness of her condition. The Guardian asserts that the statutory provision for serving "interested parties" does not save the statute, because "`interested parties' may not have any legal interest or authority to represent the property owner." He further claims that the indemnity fund, provided for in section 247a of the Revenue Act (Ill. Rev. Stat. 1987, ch. 120, par. 728a), is of no help to Mrs. Otsus, because she will be homeless and dependent upon public aid while the issue of whether she is entitled to indemnity is litigated and until such payment is made. Additionally, even if Mrs. Otsus receives payment from the indemnity fund, she will have to relocate, leaving the home she has known for years.
Both National and the State (hereinafter appellees) respond that the Illinois Supreme Court resolved the issue of the constitutionality of the Revenue Act notice provisions in Rosewell v. Chicago Title & Trust Co. (1984), 99 Ill.2d 407, 459 N.E.2d 966. In that case, the question before the court was "whether due process requires the county collector to give personal notice of an impending tax sale to all parties with an interest in the real estate." (99 Ill.2d at 410.) In holding that the notice provisions of the Revenue Act are consistent with due process protection afforded by the United States and Illinois *1075 Constitutions, the court stated:
"The most important criterion in the area of procedural due process is `reasonableness.' The State must act reasonably before depriving a person of a property interest, but burdensome or elaborate efforts to notify interested parties are not constitutionally required. * * *
The basic contention projected in this appeal is that mortgagees and other interested parties should be given the same notice as assessees before a tax sale takes place. The current Illinois statute provides for notice by mail to the assessee before the tax sale. We find this statutory provision entirely consistent with the due process standards in Mullane and its progeny." (99 Ill.2d at 412.)
The court noted that the tax buyer must comply with "stringent statutory notice requirements before the end of the redemption period," as well as that the names and addresses of mortgagees are not "readily at hand." (99 Ill.2d at 413.) The court continued:
"Although we can detect no due process infirmities with the Illinois statute, we are also mindful of the enormous public policy considerations underpinning the tax sale procedure. Tax revenues are literally the lifeblood of government. At no time since the great depression have the fiscal necessities of government at all levels and the need for dependable tax collections been greater than at present." 99 Ill.2d at 416.
The notice provisions were also upheld in Catoor v. Blair (N.D. Ill. 1973), 358 F. Supp. 815, aff'd (1973), 414 U.S. 990, 38 L.Ed.2d 231, 94 S.Ct. 345. In that case, plaintiffs, representing the class of all persons against whom a tax deed had been issued or against whom was pending a petition for issuance of a tax deed in an Illinois court, challenged the constitutionality of the Illinois tax deed statute (Ill. Rev. Stat. 1973, ch. 120, pars. 697 through 756), arguing that they received inadequate notice and lack of opportunity for a judicial hearing on tax sales and redemption rights, in violation of their fourteenth amendment rights to due process and equal protection. The court reviewed the notice provisions of the statute and stated:
"The aforementioned notices and opportunities for a landowner to either pay or object to his real estate taxes must be deemed constitutionally adequate when weighed against the legitimate interest of the state in collecting its taxes.
* * *
Although the Court notes that there is still considerable room for improvement in the challenged statute, we are not *1076 convinced that the statute is unconstitutional. As the Supreme Court recently observed,
`[n]o scheme of taxation, whether the tax is imposed on property, income or purchases of goods and services, has yet been devised which is free of all discriminatory impact. In such a complex arena in which no perfect alternatives exist, the Court does well not to impose too rigorous a standard of scrutiny lest all local fiscal schemes become subjects of criticism under the Equal Protection Clause.'" Catoor v. Blair, 358 F. Supp. at 817, quoting San Antonio Independent School District v. Rodriguez (1973), 411 U.S. 1, 36 L.Ed.2d 16, 93 S.Ct. 1278.
Appellees distinguish the cases relied upon by the Guardian, claiming that "in Dale, there was a presumption of incompetence for the reason that the proceeding itself was a hearing to appoint a committee to manage the affairs of an incompetent." They maintain that Covey is "inapposite," because in that case the authorities knew the taxpayer to be incompetent, and no notices were served on other individuals who might have helped her. They also contend that the law presumes that property owners are sane and competent, and that incompetency cannot be inferred from old age, infirmity or a defective memory. (Esliek v. Montgomery (1972), 3 Ill. App.3d 447, 278 N.E.2d 412.) Here, counsel for National testified that he believed Mrs. Otsus was eccentric but not necessarily mentally ill.
 5 Neither Rosewell nor Catoor addresses the issue raised in the case at bar: whether compliance with the statutory notice requirements is sufficient when dealing with an incompetent property owner. We find that Covey controls our decision in the instant case. As in that case, Mrs. Otsus was known in her community as one lacking in competency, yet neither the authorities nor National made an attempt to have a guardian appointed to look after her interests. The record indicates that National became aware of PLOWS' involvement with Mrs. Otsus as a result of its, National's, conversations with the Village of Evergreen Park; therefore, we can reasonably conclude that both National and the village knew of Mrs. Otsus' diminished capacity. Moreover, the village was aware that Mrs. Otsus was not paying her taxes, as it held liens against her property. National points out that it served PLOWS with notice and argues that by doing so, it did all it could to give notice to Mrs. Otsus. We do not know what, if anything, PLOWS did after receiving this notice, but that is not important. By providing for notice to "parties interested in the premises" (Ill. Rev. Stat. 1987, ch. 120, par. 744), the *1077 statute does not allow National to avoid its responsibility to give "notice reasonably calculated, under all the circumstances, to apprise [Otsus] of the pendency of the action." (Mullane, 339 U.S. at 314, 94 L.Ed.2d at 873, 70 S.Ct. at 657.) Moreover, National cites no authority to support its contention that PLOWS is a party "interested in the premises" as that phrase is used in the Revenue Act.
By serving PLOWS, National demonstrated that it was aware that Mrs. Otsus was in need of assistance and that its purchase of her property was neither routine nor of the ordinary sort. It now argues that technical compliance with the statutory notice requirements was sufficient to give her notice that her property had been sold; however, National knew or should have known that such notice was inadequate to inform Mrs. Otsus that her interest in her property was at risk. The notice provisions of the Revenue Act are not reasonably calculated to apprise an incompetent of the information they are designed to convey, which is that the property has been sold and that there is a statutory period provided for redemption; thus, they are not consistent with the due process standards in Mullane. Requiring a tax purchaser to employ means "such as one desirous of actually informing the [incompetent] might reasonably adopt to accomplish it" (Mullane, 339 U.S. at 315, 94 L.Ed. at 874, 70 S.Ct. at 657) is neither burdensome nor does it demand "elaborate efforts" (Rosewell, 99 Ill.2d at 412). Accordingly, we find that the sale of Mrs. Otsus' property without effective notice to her was a violation of due process.
For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.
Reversed.
BILANDIC, P.J., and DiVITO, J., concur.