DOUGLAS L. PRUITT, Special Adm'r of the Estate of Crystal Niki Pruitt, Deceased, Plaintiff-Appellant, v. STEVE JOCKISCH *et al.*, Defendants-Appellees.

Fourth District   No. 4—91—0719

Opinion filed April 30, 1992.—Rehearing denied June 1, 1992.

Norbert J. Goetten, of Jerseyville (Kenneth H. Hobson, of counsel), for appellant.

Rammelkamp, Bradney, Dahman, Kuster, Keaton, Fritsche & Lindsay, P.C., of Jacksonville (Forrest G. Keaton, of counsel), for appellees.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

Section 3 of the Wrongful Death Act (Act) states:

"In the event that the only asset of the deceased estate is a cause of action arising under this Act, and no petition for letters of office for his or her estate has been filed, the court, upon motion of any person who would be entitled to a recovery under this Act, *and after such notice to the party's heirs or legatees as the court directs*, and without opening of an estate,

may appoint a special administrator for the deceased party for the purpose of prosecuting or defending the action.

If a judgment is entered or the action is settled in favor of the special administrator, he or she shall distribute the proceeds as provided by law, except that if proceeds in excess of $1,000 are distributable to a minor or person under legal disability, the court shall allow disbursements and fees to the special administrator and his or her attorney and the balance shall be administered and distributed under the supervision of the probate division of the court if the circuit court has a probate division." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 70, par. 2.1.

The legal questions presented here are as follows: (1) whether section 3 of the Act requires that some notice of the hearing on the petition for appointment of a special administrator must be given to the decedent's heirs, devisees or legatees; (2) whether, if some notice is required and not given, the action of the special administrator is void as to those entitled to notice who did not receive it; and (3) if subsequent acts of the special administrator are void as to those entitled to notice who did not receive it, may the void nature of those acts be raised on behalf of those persons to set aside, as to them, a release granted by the special administrator, under purported court authority, to an individual or entity alleged to have wrongfully caused the death of the decedent.

As we subsequently explain, we hold that (1) the requirement of section 3 of the Act that a petition give "such notice to the party's heirs or legatees as the court directs" does mandate the giving of at least some notice to those persons, unless they appear, but the nature of the notice is within the discretion of the court; (2) the failure to give any notice deprives the court of personal jurisdiction over those entitled to notice who did not receive it, and renders subsequent actions of the special administrator void as to them; and (3) the void nature of subsequent acts by that administrator may be raised on behalf of those wrongfully deprived of notice to collaterally attack the validity, as to them, of a release given by the special administrator to persons or entities alleged to be liable for the decedent's death.

This appeal arises from the proceedings on a two-count complaint filed on May 10, 1991, in the circuit court of Greene County by Douglas L. Pruitt, who had been appointed by that court as special administrator of the estate of his deceased minor daughter, Crystal Niki Pruitt. Count I was against Steve and Deborah Jockisch (defendants) and charged them with liability under the Act for the death of the de-

ceased minor. Count I alleged that the minor had drowned in an aboveground swimming pool on defendants' property. We need not consider count II, which was against Country Companies, defendants' liability insurer. That count was dismissed in bar of action on Country Companies' motion early in the proceedings, and no appeal has been taken from that judgment.

Defendants responded to count I by filing a motion to dismiss pursuant to section 2—619 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 2—619). The motion set forth a purported release given defendants for $10,000 by Penny Pruitt, the decedent's mother. The release indicated she purported to be special administrator of her decedent daughter's estate pursuant to an appointment under section 3 of the Act by the circuit court of Cass County. Plaintiff responded to defendants' motion by a pleading maintaining that the appointment of Penny Pruitt, although made before the appointment of plaintiff in Greene County, was made without any notice to any person who might have a right to recover for the death of the decedent minor.

The record indicates the Pruitts were estranged at the time of the minor's death and that, in addition to being survived by her parents, the minor was survived by two children of her father by a former marriage. The record also showed that at the time of her appointment, Penny had filed an affidavit that the "whereabouts" of plaintiff were "unknown." In his answer to defendants' section 2—619 motion to dismiss, plaintiff alleged that Penny knew where his parents lived and could have learned where he was from them.

The circuit court of Greene County denied the defendants' motion to dismiss but allowed defendants' motion for a transfer of venue to the circuit court of Cass County based upon the doctrine of *forum non conveniens*. After transfer, defendants moved for reconsideration of their section 2—619 motion to dismiss. The court allowed the motion and, after a hearing, dismissed count I, the only remaining count, in bar of action by order of September 10, 1991. Plaintiff has appealed.

Prior to analyzing the procedural problems involved here, a brief mention of the nature of the tort action for wrongful death is appropriate. The common law afforded no remedy on behalf of the surviving heirs or next of kin of a person wrongfully killed, but in 1853, the General Assembly enacted the Act, and for the first time created a cause of action for wrongful death in Illinois. (Ill. Ann. Stat., ch. 70, par. 1, Historical Note, at 283 (Smith-Hurd 1989).) To avoid multiple lawsuits, the Act requires that a single action be brought on behalf of the members of a class entitled to recover. (*Hall v. Gillins* (1958), 13

Ill. 2d 26, 30, 147 N.E.2d 352, 355.) That class, with minor exceptions set forth in the Act, consists of the surviving spouse and next of kin of the deceased to the extent that they incur injury recognized by the Act. The action must be brought by the representative of the estate of the decedent. (Ill. Rev. Stat. 1989, ch. 70, par. 2.) Section 3 of the Act makes a special administrator appointed thereunder such a representative.

No case closely on point in regard to the issues before us has been called to our attention. Conflicting principles are involved. One is the desirability of affording a person in the position of plaintiff notice of proceedings affecting his rights. The other is the need for people, such as defendants, in dealing with a representative, such as Penny Pruitt, who has letters of office, to be able to rely upon the authority of the representative to act.

We begin by considering the meaning of the language of section 3 of the Act, which states that the court may appoint a special administrator "after such notice to the party's heirs or legatees as the court directs." (Ill. Rev. Stat. 1989, ch. 70, par. 2.1.) Plaintiff would have us interpret those words to mean that notice should be given in the same manner as required for the appointment of administrator under the Probate Act of 1975 (Probate Act) (Ill. Rev. Stat. 1989, ch. 110½, par. 1—1 *et seq.*). Defendants maintain that section 3 of the Act leaves the decision as to whether any notice be given to the discretion of the court.

Before an administrator can be appointed under section 9—5(a) of the Probate Act (Ill. Rev. Stat. 1989, ch. 110½, par. 9—5(a)), 30 days' notice by mailing must be given to all persons shown on the petition for appointment to have an equal or greater right than the petitioner to nominate the administrator. Then section 9—5(b) of the Probate Act (Ill. Rev. Stat. 1989, ch. 110½, par. 9—5(b)) requires that within 14 days after letters of administration issue, notice must be given of the appointment to all heirs not notified of the hearing on the petition for appointment of the administrator. Further provision is made for notice by publication to those for whom mailing addresses were unavailable. Under those procedures, the original appointment of an administrator can be temporary if a person having a greater right to nominate and who received no original notice later appears.

Adoption of plaintiff's theory that the notice format for appointing administrator under the Probate Act was intended to also apply to appointments under section 3 of the Act would have given needed protection to those other than Penny Pruitt who might be entitled to recover. However, if the General Assembly had intended for

those complicated provisions to be applicable to section 3 appointments, the General Assembly would have so stated directly. Rather, available history indicates a legislative intention that the section 3 procedure was to be relatively informal:

> "[T]he intent of this [section was] to save persons with [a] cause of action the necessity of opening an estate and make it more convenient and also to cut the red tape. If *** the only asset to a decedent's estate is a cause of action for his wrongful death, the court will be authorized by this Bill to appoint a special administrator who will prosecute or defend the action *** upon a motion of a person entitled to recovery under the Act ***." 80th Ill. Gen. Assem., House Proceedings, May 3, 1977, at 142 (statements of Representative Beatty).

The instant situation, on the other hand, is a good example of how unfairness can develop from an interpretation of section 3 of the Act which permits appointment of a special administrator without notice. As we have indicated, Douglas L. Pruitt had two children by a prior marriage. No indication is given that either Penny or Douglas L. Pruitt had any other children. Thus, the decedent left her parents and two half-siblings as the only people who could possibly recover under the Act. The precedent in this district is that siblings cannot recover for loss of society and companionship. (*Moss v. Whitaker* (1991), 214 Ill. App. 3d 89, 573 N.E.2d 333; *Carter v. Chicago & Illinois Midland Ry. Co.* (1988), 168 Ill. App. 3d 652, 659-60, 522 N.E.2d 856, 860-61, *appeal denied* (1988), 122 Ill. 2d 571, 530 N.E.2d 240; but see *Sheahan v. Northeast Illinois Regional Commuter R.R. Corp.* (1986), 146 Ill. App. 3d 116, 120, 496 N.E.2d 1179, 1182; *Singh v. Air Illinois, Inc.* (1988), 165 Ill. App. 3d 923, 932-33, 520 N.E.2d 852, 858; *Schmall v. Village of Addison* (1988), 171 Ill. App. 3d 344, 351-54, 525 N.E.2d 258, 263-65, *appeal denied* (1988), 122 Ill. 2d 594, 530 N.E.2d 264; see Hubbart, *Siblings' Right to Recover Loss of Society Under the Wrongful Death Act*, 80 Ill. B.J. 68 (1992).) However, Douglas L. Pruitt, in his present capacity, represents the interests of anyone other than Penny Pruitt who has a similar right of recovery, received proper notice of his appointment, and had a settlement forced on him or her without opportunity to be heard as to who negotiated the settlement.

■ Because of the appointment of Penny Pruitt as special administrator, those persons whose interests are now represented by plaintiff had to abide by a settlement made by a person with whom they were at odds. Had notice been given, plaintiff, for example, might have persuaded the court to appoint a more neutral person, and he

would have had an opportunity to object to the proposed settlement. While no contention has been made that plaintiff's interests have been denied procedural due process, and we are not holding such a deprivation took place, we recognize that reasonable efforts to notify a party of a proceeding at which a litigant's property interest is involved are generally considered a significant aspect of due process. *Rosewell v. Chicago Title & Trust Co.* (1984), 99 Ill. 2d 407, 412, 459 N.E.2d 966, 968; *O'Connell v. Pharmaco, Inc.* (1986), 143 Ill. App. 3d 1061, 1069, 493 N.E.2d 1175, 1180.

We also note that in sections 19—4 and 19—8 of the Probate Act, which respectively concern the sale or pledge of personalty of the decedent and the compounding, compromising, and exchange of personalty, express statements are made that the court can grant the relief requested upon notice as determined by the court or *"without notice."* (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 110½, pars. 19—4, 19—8.) This legislative choice of words gives some indication that the General Assembly would have used the same careful explanation concerning the court's power to proceed without notice if that power were intended to be granted to the court by section 3 of the Act.

■ In view of (1) the fairness of an interpretation of section 3 of the Act that requires some notice of proceedings for appointment of a special administrator, (2) the problems which can arise, as here, where no notice is required, and (3) the general due process concepts served thereby, we hold that the phrase "such notice to the party's heirs or legatees as the court directs" in section 3 of the Act requires the giving of some notice to those who might be able to recover under the Act, but that notice may be tailored as to time and manner of service as the court deems appropriate.

We now turn to the consequences of the failure to give notice to plaintiff. Plaintiff maintains the failure of notice rendered the appointment of Penny Pruitt void as well as her subsequent acts, including the execution of the purported release of defendants. The major thrust of the defendants' argument is that any error in the failure of notice is of such a nature that it did not render the release void. Defendants rely principally on the precedent of *Balsewicz v. Chicago, Burlington & Quincy R.R. Co.* (1909), 240 Ill. 238, 88 N.E. 734, *In re Estate of Redmer* (1952), 348 Ill. App. 76, 108 N.E.2d 25, *Gearty v. L. Fish Furniture Co.* (1937), 289 Ill. App. 538, 7 N.E.2d 493, and *Chicago & Eastern Illinois R.R. Co. v. Wolfrum* (1907), 136 Ill. App. 161.

In *Balsewicz*, a suit was brought in the circuit court of Bureau County for wrongful death by a personal representative who had ob-

tained letters of administration from the county court of that county. The supreme court overturned a judgment on a jury verdict in favor of that administrator on the basis the trial court had refused to submit to the jury a release obtained from an administrator of the decedent's estate appointed by the probate court of Cook County. The supreme court reached conflicting conclusions that (1) the residence of the deceased, at the time of death, within a county was necessary to give that court jurisdiction of the decedent's estate; but (2) because the probate court of Cook County had a general jurisdiction of estates of decedents, its jurisdiction to issue letters to the Cook County administrator, who thereafter gave the release, was conclusively presumed.

The *Balsewicz* court stated that under the circumstances there, courts such as the probate court of Cook County "are presumed to have jurisdiction to give the judgments they render *until the contrary appears*, such grant of administration is conclusive and not subject to attack in a collateral proceeding." (Emphasis added.) (*Balsewicz*, 240 Ill. at 246, 88 N.E. at 737.) Apparently, the court did not deem significant the fact that at the time of trial it was apparent that the decedent had died a resident of Bureau County, and, by the court's own theory, the probate court therefore lacked subject-matter jurisdiction.

In *Gearty*, a stepfather petitioned for and was appointed guardian of a minor boy by the probate court of Cook County and settled a cause of action the minor had against an alleged tortfeasor. Several years later, the boy's uncle sought to set the release aside when it was pleaded against him in bar of a subsequent suit filed after he (the uncle) became guardian. The uncle contended that the release was void because the stepfather had no standing to petition to be guardian. Citing *Balsewicz*, the appellate court held the first appointment by the probate court could not be collaterally attacked and upheld the ruling of the trial court dismissing the case as barred by the release. However, the appellate court did state that the probate court "had jurisdiction to act" in appointing the stepfather as guardian. *Gearty*, 289 Ill. App. at 547, 7 N.E.2d at 496.

In *Redmer*, the circuit court ordered Hugo J. Hakala to vote certain shares of stock of a decedent in a certain manner. Objections were made to the order on the basis that Hakala was not the administrator of the will annexed of the decedent, as he purported to be. The record showed that the decedent's will had named certain persons as executor without bond. The court had then appointed them executors upon furnishing bond. When they did not do so, an order was entered appointing Hakala administrator with the will annexed, and he served

in that capacity. On appeal, the appellate court held that questioning Hakala's power to act constituted an impermissible collateral attack upon his appointment. The court indicated that the only way to attack the propriety of his appointment was to do so in the probate proceedings by a petition to revoke letters or an appeal from the order of appointment.

Defendants also rely upon a theory that even if the appointment of a personal representative is void, as long as that representative has letters of office, one sued by that representative in his or her purported representative capacity cannot dispute the authority of the representative. They cite *Gould v. Schlossberg* (1942), 316 Ill. App. 57, 43 N.E.2d 693, and *In re Estate of Trost* (1937), 292 Ill. App. 60, 10 N.E.2d 857. However, the situation in those cases is dissimilar from that here. Plaintiff is not contesting the power of anybody to sue him either individually or in his representative capacity. He is contesting, on behalf of the estate of the minor, the validity of a release granted by a former purported special administrator whose appointment, he contends, was void as to him and as to any possible interest of his children because the appointing court had no jurisdiction over their persons at the time of the appointment of Penny Pruitt, or at any time thereafter before that estate was closed.

The cases relied upon most strongly by defendants contain a common thread as, in each case, the question about jurisdiction concerns the question of whether the court sitting in probate had *subject-matter* jurisdiction and the decisions conclude that great deference should be given to the presumption that the court did have such jurisdiction when it was empowered to hear the type of cases before it. Here, the issue is not whether the Cass County circuit court had subject-matter jurisdiction when it appointed Penny Pruitt as special administrator. The question is whether that court had personal jurisdiction over plaintiff and his daughters so as to affect their rights.

Illustrating the difference between (1) the presumption of subject-matter jurisdiction given a court sitting in probate in regard to a probate matter, and (2) the strict requirement that jurisdiction be obtained over the persons involved in a probate matter, is the case of *In re Estate of Stanford* (1991), 221 Ill. App. 3d 154, 581 N.E.2d 842, *appeal denied* (1992), 143 Ill. 2d 638, cited by plaintiff. There, in the probate of a testamentary estate, notice required by sections 6—21 and 8—1 of the Probate Act (Ill. Rev. Stat. 1985, ch. 110½, pars. 6—21, 8—1) was not given to certain of numerous heirs listed on the petition for probate of the will. After the estate was closed, one of those heirs filed a petition to declare all acts of the executor, including sales

of realty and personalty, void as to her. The circuit court granted the relief.

On appeal in *Stanford*, the appellate court affirmed, holding that the notice failure did deprive the trial court of jurisdiction of the complaining heir and rendered all of the orders void as to her. The court further held that the heir who did not get the notice could raise the issue that the order was void at any time. The collateral consequence of setting aside various sales as to the complaining heir is somewhat similar to the setting aside of the release as to the interests of those not receiving notice here. The *Stanford* court cited *Vogel v. Katz* (1965), 64 Ill. App. 2d 126, 212 N.E.2d 295. There, an order admitting a will to probate was set aside as to an heir who did not receive notice of the probate of the will as required by the then statutory scheme in that regard. Ill. Rev. Stat. 1961, ch. 3, pars. 63, 64.

We recognize defendants' argument that third parties, in dealing with a personal representative who has letters of office, need to have a reasonable way of being assured of the representative's power to act. We agree with the precedent presuming that the court sitting in probate has subject-matter jurisdiction. We do not hold that any particular deviation from statutory mandate deprived the Cass County circuit court of subject-matter jurisdiction to appoint Penny Pruitt as special administrator or to approve the settlement. But, as indicated in *Stanford*, personal jurisdiction is another matter.

■ A party dealing with a special administrator under section 3 of the Act can look to the record of the court making the appointment and find out if proof is shown that those entitled to notice by the terms of the petition were shown to be given that notice. The burden of such an investigation thus is much less than would be the burden of checking matters concerning the residence of a decedent (*Balsewicz*, 240 Ill. 238, 88 N.E. 734) or the relationship between one seeking to be a guardian and the purported ward (*Gearty*, 289 Ill. App. 538, 7 N.E.2d 493). The rule we apply here is similar to that set forth in section 2—1401(e) of the Code (Ill. Rev. Stat. 1989, ch. 110, par. 2—1401(e)), which grants protection to a third party acquiring for value and otherwise in good faith an interest based upon a judgment later set aside under the provision of that section. That protection is not granted when "lack of jurisdiction affirmatively appears from the record proper." Ill. Rev. Stat. 1989, ch. 110, par. 2—1401(e); see also *State Bank v. Thill* (1986), 113 Ill. 2d 294, 497 N.E.2d 1156.

■ The judgment dismissing the complaint must be reversed and the cause remanded to the circuit court of Cass County for further proceedings upon plaintiff's complaint. The release will stand as a bar

to any recovery for any injury suffered by Penny Pruitt, as the release was not void as to her. As she is not a party to these proceedings, we cannot decide what the rights are between her and Douglas L. Pruitt or between her and defendants to the proceeds of the prior settlement. The record shows she received all of those net proceeds after paying attorney fees and expenses.

Accordingly, we reverse the judgment of dismissal and remand to the circuit court of Cass County for further proceedings consistent with this opinion.

Reversed and remanded with directions.

COOK and LUND, JJ., concur.